Case number 20-3720, Northern Iowa, United States v. Brandon Seys. Mr. Bishop. Thank you, Your Honor. May it please the court. I'm going to focus on the issue of whether the district court should have allowed Mr. Seys to withdraw his guilty plea. If you look at the case law on this issue, the facts of this case are very unusual. The typical case of a defendant trying to withdraw his guilty plea involves a guy that pleads guilty. He has a change of heart, thinks, well, if I'd just known this, my attorney had told me that, I would have never pled guilty. I want to go to trial now, and tries to take back his guilty plea. Mr. Seys' case is not that case. Mr. Seys had a motion to dismiss, a hearing on a motion to dismiss, that was denied, obviously, before he pled guilty. Once it was denied, he pled guilty, and then several months after pleading guilty, he discovered evidence, or his attorney discovered evidence, that called into question some of the testimony in that hearing. And so, it's not the same type of case. He doesn't want really to go back to trial. He wants to try to re-litigate that issue. Now, the rule, Rule 11d 2b, allows a defendant to do that if they can show a fair and just reason, and we certainly think that Mr. Seys is able to do that. The case, just to give a very brief factual rundown, there was surveillance of Mr. Seys' house. It was used to obtain all of the search warrants in this case, would have been used at trial against Mr. Seys. There was a video surveillance, or at least an effort to surveil the house through video, that would have covered all of that surveillance, but that was not preserved by law enforcement. And so, Mr. Seys files a motion to the lead investigator, investigator Carney testifies, and basically says, well, we thought that it would be saved for 30 days. That's what we're used to. We use this state camera, and after about three weeks, I checked with the state, and they told me, we don't save the video. You've got to give us a hard drive ahead of time. We didn't know that. So, this was all sort of an honest mistake. And the district court, the magistrate court, the district court, both accepted that and said, yes, this was a mistake and ruled against Mr. Seys, denied the motion to dismiss. Mr. Seys, literally the next day, he enters his guilty plea. He feels, well, I tried, I lost. After that, about three months after that, Mr. Seys, through his attorney, finds out that that's not correct. And in fact, that's not really a disputed fact in this case. It's clear that the state, in fact, did preserve the video and preserved it for a period of 45 days, and the state doesn't require a hard drive. And all of that testimony from investigator Carney was, in fact, incorrect. And so, at that point, of course, Mr. Seys thinks, well, that doesn't feel right to me. That doesn't feel fair and just that the court didn't hear any of this in the original motion to dismiss. And that seems like an important problem. It doesn't seem like a mistake anymore to Mr. Seys. And so, ultimately, he files the motion to withdraw the guilty plea with the hope being that if I'm allowed to withdraw this guilty plea, I can re-litigate this issue. And so, that's what he does. And then there's a hearing held on that. Investigator Carney testifies again at this hearing. And at that point, it's clear that certainly Mr. Investigator Carney knows that the state's going to say, we preserved this. It could have been obtained by the state. And so, when he's asked by the government's attorney, well, what did you mean? Because at the last hearing, you said there was a communication with the state and the state told us that it couldn't be saved. And so, he says, well, I said the state, and I'm paraphrasing obviously, but what I meant was another agent, Agent Molnix, the agent that I sort of worked with in this case to set up this video camera. And I said state or I agreed with state because he's an Iowa Department of Narcotics Enforcement officer. And if you look at, and I hope I do an effective job or did an effective job in the brief, but if you look at his testimony in that first hearing, and you look at the context, and a lot of the questions were asked by the magistrate judge, and it's clear. And I think the magistrate even acknowledged that in the second hearing, that I took that you were meaning the state and by the state, we're talking about the Department of Public Safety, the people that actually save this video. And he thought that because it's clear that that is in fact, the context of the conversation, they use the term state repeatedly, within a context that had to mean the Department of Public Safety that the entity that saved this footage. And so that, as I say, it's, I guess, detailed more in my brief. The district court, well, the magistrate court and the district court both found that that wasn't, in fact, the case. In fact, the district court ruling essentially said, well, defense tries to be overly literal in parsing Investigator Carney's testimony, and that those inferences are unreasonable. But the district court doesn't really, doesn't really go beyond that, doesn't just gives the conclusory statement, well, that's unreasonable to make the inferences that we were trying to make, which is essentially that Officer Carney, his testimony was not truthful in either of the hearings. You know, I get the untruthful piece, and I know we're pushing on that, and it makes some logical sense. But we do have a sort of a line of cases to talk about that, that sort of bad faith, untruthfulness is all impeachment witnesses, evidence without showing some other exculpatory nature. And that impeachment evidence is not ordinarily sufficient to, you know, compel a withdrawal of the plea. And I get where that's completely unsatisfactory to anyone who represents real people in court, but it is the body of law that we kind of start from. So how would you address that? And so I don't have to ask you again, because I think you can probably lay it all in in one answer. And the other piece is that there's some evidence that your client had a surveillance system that was recording all the time anyhow, and how, if at all, does that tie into this analysis? So the issue of what the video would have done for Mr. Size and what would have been beyond impeachment, we do feel that it would have been. Clearly, it is impeachment if the officer comes in and says, these people were coming and going from the residence, and the video shows that they weren't. But of course, if the video shows that they weren't, then the video is also showing there isn't the foot traffic that I guess is implied by someone that is dealing drugs, that that in fact wasn't taking place. So we feel that it goes beyond impeachment in that respect, for sure. The issue of, and I apologize, what was the second issue, Your Honor? Well, it was just that there's some kind of allegation lurking around that your client in fact had a surveillance video that would show a lot of this that somehow never was produced, and you have no obligation of production. I'm not trying to imply that, but does that matter at all? Well, we feel that the evidence isn't entirely clear as to whether or not the video would have been essentially duplicative of what the surveillance camera showed. My understanding, and I wasn't Mr. Size's attorney at the time when these things happened, but that the video was seized, and then Mr. Size gave information to allow access but didn't have a password for that. And so it was never accessed. We don't really know what it showed. We don't really know whether it would have shown anything. We don't know if it was operative. I think those are issues that probably if the court had allowed the case to go back for a hearing on the motion to and probably would be maybe dredged up. I understand the government's argument is that, well, if they have that and that's duplicative, then it goes to whether or not it would in fact be useful to the defendant. But we feel that there's just not enough evidence to demonstrate whether or not it even exists. We know there was a surveillance system, but whether it was functioning or not is not clear from the record. And it seems to imply that your client quote essentially is that he just didn't know the password and that's, is that it? He didn't testify. He's never testified in any of the hearings. But yes, that's my understanding is that he didn't have a password, that it wasn't really set up, it wasn't functioning. And that's things that might be able to be testified to at a future hearing, but it's not anything that is specifically in the record from anyone. Mr. Bishop, does there need to be something in the record that we can look at to show that the missing evidence was exculpatory beyond a mere assertion on appeal that it might be? I don't feel that there is. I think, I think the chief argument of Mr. Size is that it is potentially exculpatory. I mean, there's really no way because it was destroyed. There's no way for us to say, see, here it is in the video that's different from what the officer would have testified or different from this. So it's almost impossible for us to establish that it is in fact exculpatory. But under Arizona v. Youngblood, if it's potentially useful to him, that we have to demonstrate bad faith and that's where we go into the issues with Investigator Carney and whether or not he's telling the truth and those things. But we feel that if you have the combination of both bad faith and it being at least potentially useful, that's sufficient to find the due process violation that Mr. Size seeks. Anyhow, to get back to our concerns, the district court in denying the motion seem to imply, well, I'll just read the relevant portion. It says these inferences are unreasonable and without more, they do not prove bad faith on the part of the government. I take that, I guess I'm an optimist, but I take that as the court saying, look, if I had more, then maybe I find bad faith in this situation. And of course, that kind of puts us in the catch-22, which is we're asking for a hearing so that we can provide the court more. And I think specifically in the brief, the obvious person that we'd like to hear from is Agent Molnix to be able to say whether or not Investigator Carney is in fact telling the truth or whether in fact he is not telling the truth when he explains why this was destroyed. But the court was there any reason why Agent Molnix couldn't have been called at the conclusion of the hearing? As I understand your position is that at that time, you didn't know what Agent Carney was going to say. And so you didn't realize that in your view, Molnix would be relevant. Is there any reason why there couldn't have been a motion to reopen right away at the conclusion of the hearing? I think there actually is effectively a motion to reopen the record. We want to be able to take back the guilty plea to do that. Frankly, we felt that the fact that Molnix didn't testify enhances the argument to say, look, Judge, you need to hear from this person. Let us take back the guilty plea so we can have an actual hearing. Because the hearing on that date, that second hearing was a hearing to take back the guilty plea. It wasn't really to litigate the issue of whether or not there was bad faith or not. So we felt the fact that the state or the government didn't call him was sort of an open door, an open invitation for the court to say, well, I need to hear that. And so I want to grant this motion so I can hear that. So I understand the government's argument. I understand the question that maybe we should have made that tactical choice to call him. But we felt we're asking to have a full record on this by asking for the state. So I do want to take a minute. I'm running out of time, but we feel that there's clearly a fair and just reason. The case law requires other things, other factors that Mr. Size has difficulty presenting. The actual innocence argument that he's asserting his actual innocence, it doesn't really lend itself very well to this case. This is a unique case. As I said, most cases are individuals saying, I didn't do this after all. I want to take it back. I want to go to trial. It's never been what Mr. Size has wanted to do. He's wanted to relitigate this thing. And so for the court to say, well, he's not claiming he's innocent. That's a mark against him. It is a factor the court has to consider. We would urge that in this unique situation, it really shouldn't be given much weight. The other factors are the went and asked for it to be lifted. Again, in this situation, he didn't learn about the issue until months later. Then his attorney withdrew because of a conflict of interest. Then I was appointed and there was COVID restrictions. It was right at the beginning of the COVID issue. So there was a timeframe, but it's all explained in basically what happened. And then finally, of course, is the prejudice to the government. And that one, the district court found in favor of the defendant and said, well, look, going back to litigate, this isn't terribly prejudicial to the government. So we do believe the fair and just reason is there. The other factors, the court has to consider them. But if you consider those factors in light of what is a fair and just reason, we don't feel that those outweigh or some of them weigh in Mr. Size's favor. And so it shouldn't preclude the court or shouldn't have precluded the court from allowing Mr. Size to withdraw his guilty plea. Thank you. Thank you. Thank you. Nidal. May it please the court, Emily Nidal, Assistant United States Attorney for the United States of America. The defendant has failed to show a fair and just reason to withdraw his plea. His plea was knowing, voluntary, and with adequate representation. There was no Brady violation in order to establish a Brady violation, the defendant must show a suppression of evidence that was favorable to the defendant and the material to the issue of guilt. It's only material if there's a reasonable probability disclosure would have made a different outcome. Conjecture and speculation cannot support a violation. I think based on Mr. Bishop's argument this afternoon, he seems to concede that they are just merely speculating, speculating that if they were given the opportunity to call Mr. Molex, that somehow the outcome would be different and something that he would say would change the court's opinion. Bad faith is required. In order to have bad faith, we need something that has exculpatory value that's apparent and that's not able to be obtained by other means. The court addressed this some with Mr. Bishop. There was this other surveillance system. The defendant actually signed a consent form and then refused to provide a password. Again, there must be showing a bad faith. Defendant focuses on a claim that, you know, before we move on, I just, I am just curious, did he actually refuse or did he say, I just don't know what it is? Your Honor, I don't believe it's within the record, specifically, other than Deputy Kearney indicates in the record that the defendant never provided a password. Outside of the record, I was counsel, but sticking with the record, it's only apparent that he did not provide one. Got it. The district court correctly rejected the argument in this case, noting that it was unreasonable, that there was a low, a lack of showing a bad faith. And ultimately this case, what happened was bad information and bad information doesn't necessarily mean bad faith. Based on the testimony in this case, Officer Kearney, who had not used the state system before, was working with the state agent. They installed the camera system after Agent Molnix made the application. After it was installed at that point, Officer Kearney inquired with Agent Molnix about retention and was told, no, this can't be retained unless we provided hard drives in advance. And because that wasn't done, this can't be retained. So that was the information that Investigator Kearney had. As the case progressed, at some point, the case was charged. And in May, as the evidence shows, defense counsel at that time, Mr. Hammer, asked about the video. I made then an inquiry to our officers. I was then told by them as evidence in the email that's in as one of the exhibits that it was not available and couldn't be retained. Also at that time then, Investigator Kearney took it upon himself to reach out to Holly Witt. Holly Witt was one of the people that was in charge of these camera systems, evidenced in their text message exchange. He asks if it's available at that time. She indicates that she has to talk to some other people. Her testimony indicated that she did, in fact, talk to Mackaman, who was one of the people who could further access the system. And at that point, nothing was provided to Investigator Kearney. So at the time he testifies in August and he's asked about the availability of the video, if it could be retained, he has one set of information whether it exists. At some point then, the defendant ultimately pleads guilty. And for whatever reason, defense counsel sends their subpoena and we find out that that information is incorrect. Now, as evidenced by the testimony of Mr. Mackaman, the fact that any video existed was an anomaly, was a malfunction. It shouldn't have still existed. They did explain that Investigator Kearney's information was incorrect, but the evidence doesn't support that either one of them spoke to Investigator Kearney. And that's important because had you talked to them, certainly the information would have been different. Instead, that supports that he talked to someone else. And in this case, that's Investigator, Special Agent, pardon me, Molnax. And unfortunately, Molnax provided him incorrect information. Now, defendant insists that if we just had Mr. Molnax testify, this all would have been different. There's nothing to support that his information would be different. Again, that's speculation. That's conjecture by them. It's not supported in the record. And ultimately, in this case, there's still not a showing of bad faith. We're asked a little bit, discuss the video would note that in this case, the defendant does intend essentially to use this impeachment. It's unrealistic that instead their method at trial would have been to show all 30 days of video to prove that the things that happened didn't occur. Ultimately, they were going to, in any event, they were going to cross-examine the officers about the lack of existence. Mr. O'Hammer actually does that in one of the hearings earlier. And he's effective in being able to ask, well, but there's no video of that because it's not retained. And so arguably, there is very minor difference between that and the video actually existing. Again, even the idea that defense counsel would have the time to watch 30 days of continuous video and the amount of time that that would take to review. So based on all of these factors, we submit that the defendant has failed in his burden to show that a motion to withdraw was improperly denied. The court's findings are very clear as to their determinations that the officers that did testify were credible as to their testimony. Molnix was not needed. Additionally, we note that as the court noted earlier this afternoon, had the defense wanted to, they could have called or asked to call Mr. Molnix. Both defense counsel and I submitted an additional exhibit that was considered by the court. It happened to be the same exhibit. Both of us, after obtaining the form that was used to obtain this video, submitted that. So both of us certainly recognize the ability to provide additional items. There was no indication orally on the record or later in writing other than the claim that now that they would like to call him, that they sought to reopen the record and were denied based on all of this. The court should affirm the lower court's decision. I don't intend on addressing specifically the sentencing issues unless the court has any questions. So unless the court has any further questions for me, the government respectfully requests that this court affirm the denial of the motion to withdraw and the defendant's sentence and the defendant, or the pardon me, the government would yield the rest of its time unless there are further questions. Seeing none, we'll turn back to Mr. Bishop, who does not have any rebuttal, but would you like a minute to respond? I would appreciate that, Judge. Thank you. The one thing that Ms. Nidale indicated or urged is that there's no evidence that had Molnix testified the outcome would have been different. We think that there is evidence and that evidence is specifically the release that he signed. And that's actually the exhibit that Ms. Nidale referenced at the end where we received that sort of after the fact, after the second hearing. There's a release and it's a release signed by Investigator Molnix and the release says in bright red ink, these videos will be preserved for 30 days. And so that evidence, that exhibit would make it very difficult for Investigator Molnix to come in and credibly say, yes, I told Investigator Carney that they don't save the videos and they need a hard drive ahead of time and it's my fault, I apologize. When we've got a release signed by him that shows that he's notified that we give you 30 days to do this. And so that is something that we feel clearly is more than speculative. It is something that would have made it very difficult for Mr. Molnix to back what Investigator Carney claimed happened. Thank you to both counsel for your arguments here today. We will take the matter under advisement.